**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**
_____

NATHAN QUINTANA,

       Plaintiff,

    v.                            No. 14CV00105 WJ/GBW

STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY,

       Defendant.

**MEMORANDUM OPINION AND ORDER**
**DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
**and**
**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

THIS MATTER comes before the Court on cross-motions for summary judgment:

(1) Defendant's Motion for Summary Judgment, filed October 10, 2014 (**Doc. 32**); and

(2) Plaintiff's Motion for Summary Judgment to Provide Coverage, filed October 10, 2014 (**Doc. 33**).

Having reviewed the parties' briefs and applicable law, the Court finds Defendant has established that it is entitled to summary judgment. Accordingly, Plaintiff's motion is denied and Defendant's motion is granted.

**BACKGROUND**

This is an auto collision case concerning underinsured motorist ("UM") coverage. The accident occurred on June 28, 2013 in Espanola, New Mexico, when Plaintiff was operating a 2003 Harley Davidson motorcycle owned by him and insured by Defendant ("State Farm"). The accident was caused by the negligence of an automobile driver Haripurkh Khalsa. State Farm denied coverage claiming that Plaintiff had rejected UM coverage in accordance with New

Mexico law.   Plaintiff contends that the rejections were not in conformance with New Mexico law and seeks to reform the policies to provide UM coverage.  In the alternative, Plaintiff claims that the State Farm agent made negligent and material misrepresentations during the purchase of the UM policies.

Plaintiff filed the complaint, styled as a Petition for Declaratory Judgment, in the First Judicial District Court, County of Santa Fe, State of New Mexico, on December 17, 2013. Defendant removed the case to federal court on February 7, 2014.  The  Court  recently  allowed Plaintiff to amend the complaint, but denied Plaintiff's request to remand the case.  Doc. 21.

## DISCUSSION

This case turns on whether the insurer complied with New Mexico law and whether misrepresentations were made to Plaintiff in the issuance of the policies at issue.   In order to avoid repetition in addressing both motions, the Court sets out the undisputed facts common to these motions as well as the law governing the issues.

At the time of the accident, Ms. Khalsa, the tortfeasor, was insured by GEICO under a policy which provided $100,000 of liability coverage.  Also at the time of the accident, Plaintiff owned seven other vehicles in addition to the Harley Davidson, all of them insured under separate policies issued by State Farm to either Plaintiff or Plaintiff and his wife Yvonne:  a 2005 Chevrolet Corvette; a 2012 Nissan Versa; a 2003 Dodge Ram pickup; a 201 Yukon Sports Wagon; a 1996 Honda Prelude; a 2009 BMW 328XI; and a 1999 Acura.  It is undisputed that the Acura policy was in full force and effect at the time of the accident, and included uninsured motorist ("UM") coverage with limits of $100,000 each person/$300,000 each accident.

State Farm presents details and supporting evidence for facts which essentially state that except for the Acura, Plaintiff was offered UM coverage with limits equal to his liability

coverage, but he signed State Farm rejection of UM coverage form ("rejection form") for all seven vehicles. *See* Deft's Statement of Undisputed Facts and Husser Aff. (Doc. 31). Plaintiff does not dispute that he actually signed each one of these rejection forms, but rather claims that these rejections were not valid.

## I.     Legal Standard

Both parties have filed motions for summary judgments, seeking relief on the same issue.

A.     <u>Summary Judgment</u> Standard

The standard for cross motions is the same as for individual motions for summary judgment. *Clark v. Assoc. Commercial*, 877 F.Supp.1439, 1441 (D.Kan.1994) (citing *Arnold Pontiac-GMC. Inc. v. General Motors Corp*., 700 F.Supp. 838, 840 (W.D. Pa. 1988)). Summary judgment is appropriate when there are no genuinely disputed issues of material fact and, viewing the record in the light most favorable to the non-moving party, the movant is entitled to judgment as a matter of law. *Bruner v. Baker*, 506 F.3d 1021, 1025 (10th Cir. 2007); *Boling v. Romer,* 101 F.3d 1336, 1338 (10th Cir. 1996). Once the party moving for summary judgment properly supports its motion, it is incumbent on the non-moving party to respond with some showing of an issue of genuine material fact.      *Allen v. Denver Pub. Sch. Bd.*, 928 F.2d 978 (10th Cir. 1991), *overruled on other grounds by Kendrick v. Penske Transp. Svcs.*, 220 F.3d 1220, 1228 (10th Cir. 2000). The non-moving party may not rest on averments in its pleadings, but instead must establish specific triable issues. *Gonzales v. Miller Cas. Ins. Co. of Texas*, 923 F.2d 1417 (10th Cir. 1991). The mere existence of some alleged, immaterial factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

When parties file cross motions for summary judgment as they have done here, the Court is entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts. *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138 (10th Cir. 2000).   The Court will consider evidence from both motions when referenced by the parties, although the Court will address Defendant's motion for summary judgment first since the facts that are set out in that motion are more comprehensive.

B.      Relevant Law

In *Jordan v. Allstate Insurance Company,* the New Mexico Supreme Court has set forth the requirements that must be met for a proper rejection of UM coverage:  (1) an offer to the insured to purchase UM/UIM coverage in an amount equal to the policy's liability limits; (2) information regarding corresponding premium charges for each available UM/UIM coverage choice; (3) the insured's "written rejection of UM/UIM coverage equal to the liability limits"; and (4) incorporation of that rejection into the policy such that the insured may fairly reconsider his decision.  149 N.M. 162, 169 (2010).   If an insurer fails to obtain a valid rejection, the policy will be reformed to provide UM/UIM coverage equal to the limits of liability.

II.      **Defendant's Motion for Summary Judgment**

Defendant's thirty-eight Statements of Undisputed Facts ("SOF") set out the details each of the seven automobile policies relating to Plaintiff's waiver of UM coverage.   For each of these policies (except for the Acura), Plaintiff signed a rejection form for UM coverage, which was then processed by State Farm underwriting and mailed to Plaintiff as a new Declaration after processing the rejection form on these dates:

| VEHICLE | REJECTION SIGNED | DECLARATION MAILED TO PLAINTIFF |
|---|---|---|
| Harley Davidson | 10/11/11; Doc. 31, Ex. A. | 5/2/2012: Declaration mailed after processing rejection form.  Doc. 31, Ex. B. |
| BMW | 2/1/2013; Doc. 31, Ex. C | 2/6/2013: Declaration mailed after processing rejection form.  Doc. 31, Ex. D. |
| Honda Prelude | 10/11/2011; Doc. 31, Ex. E | 10/13/2011: Declaration mailed after processing rejection form.<br><br>5/16/2012: new Declaration mailed as "cautionary measure" in light of *Jordan* decision.[1]  Doc. 31, Exs. F & G. |
| Nissan Versa | 10/11/2011; Doc. 31, Ex. H | 10/18/2011: Declaration mailed after processing rejection form.<br><br>5/16/2012: new Declaration mailed as "cautionary measure" in light of *Jordan* decision. Doc. 31, Ex.I & J. |
| Corvette | 10/11/2011; Doc. 31, Ex. K | 10/18/2011: Declaration mailed after processing rejection form.<br><br>2/15/2012 : new Declaration mailed as "cautionary measure" in light of *Jordan* decision.  Doc. 31, Exs. L & M. |
| Dodge Ram pickup | 10/23/2011; Doc. 31, Ex. N | 12/1/2011: Declaration mailed after processing rejection form.<br><br>5/16/2012: new Declaration mailed as "cautionary measure" in light of *Jordan* decision.   Doc. 31, Exs. O & P. |
| GMC Yukon | 10/11/2011; Doc. 31, Ex. Q | 5/17/2012: Declaration mailed after processing rejection form.<br><br>2/13/2013:  new lienholder added.<br><br>5/8/2013: another lienholder added.  Doc. 31, Exs. R, S & T. |

For each of the above policies, the policy number changed in the new Declarations

mailed out by adding or changing a letter at the end of the denominated policy number.   For

example, at the time the rejection policy was signed, the Harley Davidson policy was

denominated #073 3740-0E02-31.   After the rejection form was processed by State Farm

underwriting, the letter "A" was added to the policy number for the Declaration mailed out to

Plaintiff, which then became #073 3740-0E02-31A.

---

[1]   For the Honda, Nissan, Corvette, Dodge Ram and GMC Yukon, subsequent declarations also mailed out "as a cautionary measure" to ensure compliance with the Jordan decision for the policies underwriting insurance for the Honda Prelude, the Nissan Versa, the Corvette, and the Dodge Ram.   See, e.g., Doc. 31 (Husser Aff., ¶¶ 23, 32 & 46).   Defendant does not explain why these Declarations were sent out, when their position is that the first Declarations sent out after processing the rejection forms complied with the *Jordan* decision.  However, these subsequent Declarations hold no independent significance for purposes of the Court's analysis here, since the validity of the rejection forms signed by Mr. Quintana rides on whether there was a policy change between the date the rejection was signed and the date of the accident.

Plaintiff does not dispute the above information, but does dispute Defendant's SOF 5, 10, 15, 20, 25, 30 and 35 collectively, inasmuch as those facts imply that the signed rejection forms constituted valid rejections of UM coverage.  Plaintiff also disputes SOF 7, 8, 12, 13, 17, 18, 22, 23, 27, 28, 32, 33, 27 and 38 collectively, and with no explanation as to his reason.   The latter group of facts, as presented by Defendant, all state that the rejection forms described in those facts for the various vehicles constitute a valid rejection of UM coverage under New Mexico law, and also that no changes in those policies occurred from the signing of the rejection forms to the day of the accident.    Defendant is correct that Plaintiff offers no evidence to create a material factual dispute to those SOF listed, but in all fairness, Defendant's SOF themselves set forth legal conclusions rather than facts.  Thus, Defendant's SOF do not call for responsive facts but raise questions about the legal significance of those facts.

Plaintiff contends that Defendant's motion for summary judgment should be denied based on three arguments: (1) page two of the rejection form was not present when Mr. Quintana signed the forms; (2) the menu of coverage options is confusing; and (3) State Farm failed to obtain new rejections when the change code at the end of the policy number evolved.

A.      Whether Page Two of Rejection Form Was Presented to Plaintiff

Some context is helpful here.  Prior to the *Jordan* decision, State Farm used a single-page document for the rejection form.   Because of the additional requirement imposed by *Jordan* that, at point of sale, an insurer must provide the insured with a menu of premiums for UM coverage, State Farm revised both its rejection form and its declarations pages to include such a menu. That menu of coverage options is "page 2" of the State Farm rejection form.   *See* Doc. 31 (page 2 of Exs. A, C, E, H, K, N, and Q).

Plaintiff contends that State Farm did not comply with New Mexico law by not providing him with this menu of coverage options and corresponding premium costs for each available level of stacked coverage, as required under *Jordan*.   He claims that State Farm cannot satisfy its burden of proving that it complied with this requirement, because he does not recall seeing Page 2 of State Farm's two-page rejection form when he signed it.  As evidence of this asserted deficiency, Plaintiff offers the deposition testimony of State Farm agent Michelle Herrera, who was present when Mr. Quintana signed Page 1 of State Farm's rejection form, and purportedly testified that  she did not remember and could not say with certainty that Plaintiff was actually shown Page 2 when he signed Page 1 in 2011.   Doc. 36-1 (Herrera Dep. at 12-13:12-4).

However, as Defendant points out, this is not an accurate representation of Ms. Herrera's testimony.  What Ms. Herrera said was that if State Farm had implemented the use of Page 2 of its rejection form at the time Plaintiff signed the rejections, then Page 2 would have been present, although she could not remember the exact date on which State Farm converted to the two-page form:

Q:     So as we sit here today, you cannot say that Mr. Quintana had page 2, which is 2c, in front of him whenever he was signing page 2b; is that correct?

A:     If it—if it did exist at the time, he would have had to have seen it, if it was there. Like I say, I can't remember when this page itself came out.

Herrera Deposition at 12:14-21.   Thus, Ms. Herrera's testimony cannot be characterized as simply saying that page 2 may have been missing when Plaintiff signed the rejection form, but rather, if the form *did* exist at the time, Mr. Quintana would have seen it.   In addition to misrepresenting the point of Ms. Herrera's testimony, Plaintiff also fails to include in the deposition exhibit a copy of Ms. Herrera's Correction Page in which she clarified her line of testimony by stating: "[i]f we were using the new forms at that time, the second page would have

been there."  Reply, Ex. 1.   Plaintiff also fails to acknowledge the deposition testimony of

Nelson Husser, State Farm's Underwriting Team Manager in New Mexico and 30(b)(6)

designee.  Mr. Husser testified that "off the top of my head," the switch to the two-page form

occurred on July 25, 2011, and that after this implementation, the New Mexico agents no longer

had access to the old forms.  After July 25, 2011, the computer would automatically print out

only the two-page form.   Reply, Ex. 2 at 51-53.  Following his deposition, Mr. Husser checked

company records and confirmed that the official implementation date was July 24, 2011, which

fell on a Sunday, making July 25 the first business day after implementation.  Doc. 40, Suppl.

Husser Aff.

        A party can obtain judgment as a matter of law in its favor "only if the proof is all one

way or so overwhelmingly preponderant in favor of the movant as to permit no other rational

conclusion." *Gillogly vs. GE Capital Assurance*, 430 F.3d 1284 (10th Cir. 2005) (quoting

*Conoco Inc. v. ONEOK, Inc.*, 91 F.3d 1405, 1407 (10th Cir. 1996)).   In this case, the evidentiary

record conclusively establishes that the menu of coverage options, page 2, was present and

shown to Plaintiff when he rejected UM coverage.   As depicted in dates listed in the table above

(none of which are disputed by Plaintiff), all of the rejection forms were signed by Mr. Quintana

well after the time State Farm started using the 2-page forms which were implemented to come

into full compliance with *Jordan*.    Other than claiming a lack of recall which is insufficient to

establish a material dispute of fact, Plaintiff offers no evidence to challenge the evidence

presented by Defendant that page 2 of the rejection form *was* presented to Plaintiff at the time it

was signed.

B.     <u>Whether the Menu of Coverage Options is Confusing</u>

Plaintiff also claims that even if page 2 of the rejection form meets the requirements of *Jordan,* it is confusing to the insured.   However, Plaintiff does not point to specific portions of the forms that are confusing, or otherwise explain what is confusing.   The menu of UM coverage options is included in Exhibits A, C, E, H, K, N, and Q to the Husser Affidavit, Doc. 31.   The form is a table of available coverage with corresponding premiums.   The amount of the premium for UM coverage depends on where the insured's car is garaged, and the insured's choice of collision coverage.   The six columns (three choices of coverage under each of two territory choices) show the premium charges for every available limit of UM coverage depending on those two factors.   The State Farm agent pre-checks the appropriate box corresponding to the column which shows the insured's selection of collision coverage and the territory where the vehicle is garaged.  The only thing left for the insured to do is look down the one column that has been pre-checked to see the premium charge for every level of UM coverage offered by State Farm.   There is nothing confusing about the form.   In fact, it can be grasped more easily by viewing it rather than by reading the Court's description of the form.   Plaintiff's claim of generic confusion is not specific enough to raise any dispute of fact regarding whether the form is in accordance with New Mexico law.

C.     Whether Changes Occurred in Policies That Required New Rejection Forms

The *Jordan* decision requires that the insurer incorporate an insured's rejection of UM coverage into the policy such that the insured may fairly reconsider his decision.   149 N.M. at 169.   As mentioned previously, the policy numbers at issue were modified by the addition of a letter at the end of the number when each new Declaration was mailed out to the insured.   For the Honda Prelude, the Nissan Versa, Corvette and Dodge Ram, the change code occurred as a result of the processing of Plaintiff's rejection form.   For example, at the time Mr. Quintana

signed the rejection form for the Honda Prelude, the policy number was denominated as 064 4057 E18-31A.   The rejection form was processed by State Farm underwriting two days later, which caused the change code at the end of the policy number to evolve from A to B: 064 4057 E18-31B.   Several months later, when State Farm underwriting processed a new Declaration for the Honda Prelude, with no changes to the policy itself, the change code evolved from B to C: 064 4057 E18-31B.   See Doc. 31, Exs. E, F & G.   The policies for the Nissan Versa, Corvette and Dodge Ram followed suit.[2]

Plaintiff argues that changes to the policy number, specifically the change code at the end of the policy, created a new policy which required State Farm to obtain new rejections of UM coverage.   He points to New Mexico law which states that a rejection only remains valid for *renewal* of a policy, relying on NMSA 66-5-301(C) which provides that UM coverage "need not be provided in or supplemental to a *renewal policy* where the named insured has rejected the coverage in connection with a policy previously issued to him by the same insurer" (emphasis added).   Thus, Plaintiff is arguing that between the time he signed the rejection form and the time of the accident, the policies in question were not renewed, but had changed and that change required a new rejection form to be signed.

New Mexico law employs a fact-based inquiry to determine whether a material change occurred to a policy which would require the insurer to obtain a new rejection of UM coverage. In *Vigil v. Rio Grande Ins. of Santa Fe,* plaintiffs (relying on the same New Mexico statute as is Plaintiff in this case) asserted that the automobile policy at issue became a "new" policy rather than a renewal policy each time they added vehicles or made changes affecting the premiums to

---

[2]   As Defendant notes, this issue does not apply to the BMW policy.   In early 2013, the Quintanas applied for a new policy for their BMW, and signed a rejection of UM coverage as part of the application process.   The policy that was issued incorporated this rejection, and was denominated as 085 3074-A25-31.   This denomination remained the same until the accident.   *See* Doc. 31, ¶¶ 14-18 (and supporting exhibits).

be paid on the policy.  124 N.M. 324, 329 (Ct.App. 1997).  The New Mexico Court of Appeals rejected that argument, and held that changes to a policy must be material enough to require new rejection of UM coverage, and that "the addition of vehicles or changes made which may affect the premiums owed under an insurance policy do not constitute changes such that a new policy is created." 124 N.M. at 330. [3]  The court in *Vigil* considered that these changes did not create a new contract, but "merely amounted to a continuation of the original policy."  *Id.*

Here, six of the seven policies had no changes whatsoever between the date the rejection was signed and the date of the subject accident.  Plaintiff does not dispute this.  The only policy which had any changes at all between the execution of the rejection form and the date of the accident was the Yukon policy.  Between the time the rejection was signed and the accident, there were two changes of lienholder which were processed by State Farm.   Husser Aff., Doc. 40, ¶ 53.   Under New Mexico law, this does not come close to a change that would create a new policy, or cause a change in the policy requiring a new rejection form.   Plaintiff merely stands on ceremony, insisting that the policies in place at the time of the accidents were *replacements* and not *renewals* of previous policies, but offers no evidence or law which would suggest that the policies which existed at the time of the accident were anything other than renewals or continuations of the previous policies.

Plaintiff also contends that changes to the policy number, specifically the change code at the end of the number, created a new policy requiring State Farm to obtain new rejections of UM

---

[3]   As Defendant notes, other jurisdictions also follow a fact-based or materialiaty test."  *See Iverson v. State Farm Mut. Ins. Co*., 256 P.3d 222 (S.Ct. Utah 2011) (new policy exists "when the insurer and the insured enter into a new contractual relationship, or if changes are made to the terms of an existing insurance contract that materially alter the levels of risk contained in the contract); *Koop v. Safeway Stores, Inc*., 831 P.2d 777 (Ct.App.Wash.1992) (changes to policy must be sufficiently material to support conclusion that a new, as opposed to a renewal, policy was issued).

coverage.    According to Plaintiff, Mr. Husser's deposition statements support this contention.[4]

Defendant concedes that State Farm mailed out a "new policy" to Plaintiff with a new change

code, referring to a new physical document that was created.   However, the creation of a new

physical document for the same policy does not have the same meaning as "new policy" under

New Mexico insurance law.   It is undisputed that the policy numbers were modified by change

codes at the end of the numbers, but it is also undisputed that no changes were made to the

policies in question which rendered them new policies under New Mexico law.   In fact, Mr.

Husser also testified that changes in the change code at the end of the policy number "do not

result in a new policy, but rather show that a change to the policy has occurred and/or that a new

Declarations was printed."  Husser Aff., Doc. 31, ¶ 8.   Ms. Herrera, the State Farm agent who

handled the Quintana account, also testified that whenever there is a change to the policy, the

change code goes up a letter:

> a change could be a name change, an address change, "anytime a change is done
> and they require a [UM] form, it goes up a letter.  It's the same policy, no
> different policy number.  It just goes up a letter.

Herrera Dep., Doc. 35 at 15.[5]   Thus, none of the changes that occurred which caused the change

code at the end of the policy number (such as the processing of Plaintiff's rejection form or the

addition of new lienholders) caused a new policy to be issued that would require new rejection

forms under applicable New Mexico law.

Plaintiff offers no factual dispute to challenge Defendant's facts concerning the changes

that occurred to the policies, to rebut Defendant's evidence that Mr. Quintana received

information regarding corresponding premium charges for each level of UM coverage, as

---

[4] Plaintiff cites to Mr. Husser's deposition at page 16, line 5-9, *see* Doc. 36 at 7, but did not attach Mr. Husser's deposition as an exhibit to the response.   They are also not included in Plaintiff's briefs underlying his own motion for summary judgment; Mr. Husser's deposition excerpts in that motion are from pages 70-73, and 30-33.
[5]   This portion of Ms. Herrera's deposition is attached to State Farm's response to Plaintiff's motion for summary judgment.

required under Jordan.   Plaintiff also offers no factual dispute which would suggest that the rejection forms he signed were terminated or were no longer valid because he has not shown any changes were made to the policies at issue that would require new rejection forms.   Thus, Defendant is entitled to summary judgment.   Summary judgment may properly be granted when the facts themselves are not in dispute, but only the legal effects of the facts presented for determination.   *See Rummel v. Lexington Ins. Co*., 123 N.M. 752, 758 (1997).   In this case, the legal significance of the undisputed facts supports Defendant's position in that the change codes that occurred to the policies at issue do not require new rejection forms to be signed by the insured.   Additionally, as a matter of law, the processing of the policies to include Plaintiff's rejection forms and the change in lienholders for the Yukon, do not result in new policies requiring new rejections.   Therefore, Defendant is entitled to summary judgment.

**III.     Plaintiff's Motion for Summary Judgment**

The relevant facts have already been presented through the Court's analysis of Defendant's motion for summary judgment.   Plaintiff moves for summary judgment on two grounds: (1) State Farm did not inform Plaintiff about UM premium costs on any of his policies in a meaningful way that it met the requirements of *Jordan* and (2) even assuming the initial rejections are sufficient, those rejections terminated and new rejections were required when the subsequent policies *replaced* the original policies that were in effect when the rejection forms were signed.

Defendant does not dispute Plaintiff's SOF 1, 2, 4 and 5.   SOF No. 1 states that when State Farm uses the words "renewal" and "replaced," they have different meanings.   SOF No. 2 states that Defendant agrees that a "renewal" is simply a continuation of insurance for another period of time.   SOF No. 4 states that the letter at the end of a State Farm auto policy does not

change simply because the policy was renewed.   Plaintiff's SOF No. 5 states that where a Policy B replaces a Policy A, State Farm agrees that Policy B is not a renewal of Policy A.   These facts, however, turn out to be irrelevant to the central question here, which is whether State Farm was required to obtain new rejection forms from Plaintiff when the code changes occurred.

Defendant does dispute Plaintiff's SOF 3 and 6.   SOF 3 states that the change of the letter at the end of a State Farm auto policy number "indicates a change to the original policy resulting in the issuance of a new policy," based on the State Farm Policy Number Guide (Ex. 3). SOF No. 6 states that "[a]ll of Plaintiff's policies with State Farm at the time of the subject crash were different policies than those policies on which Plaintiff had purportedly rejected UM [coverage]."   However, the evidence presented by Plaintiff for SOF No. 6  does not state that any of these policies were different policies; Plaintiff refers to the set of stipulations by the parties on the policy numbers for each of the vehicles.   Mere reference to the policy numbers has no bearing on whether the policies that existed at the time of the accident are different policies from the original polices on which the rejection forms were signed.   Thus, SOF No. 6 is immaterial and irrelevant.

It should be clear where the Court's analysis is going, given the Court's previous analysis on these issues in the context of Defendant's summary judgment motion.  The same facts are in play and the same law governs.   Plaintiff's motion relies entirely on mischaracterization of the testimony and evidence, and seeks to prevail on technicalities for which there is no support— namely, the definitions of "replacement policies" and "new policies."

**I.    Whether State Farm's Rejection Forms Comply With *Jordan* Requirements**

Plaintiff first argues that State Farm did not inform him about UM premium costs on any of his policies in a meaningful way that met the requirements of *Jordan*.   Plaintiff does not state

exactly what was missing in an explanation of the UM premium costs, but instead states that "[e]ven the State Farm agent that had Plaintiff sign the purported rejections stated that insureds are routinely confused by the premium page State Farm uses on its rejection forms." Doc. 34 at 6. This is not much to go on. First, there is no deposition testimony to support this statement. Second, it would probably be safe to say that insureds are routinely confused by most insurance contract documents, but this does not necessarily mean that documents which may be confusing are in violation of New Mexico law. Third, in the discussion included in Defendant's summary judgment motion, the Court has already dispensed with the notion that the menu of coverage options presented to the Quintanas was confusing. Plaintiff offers no argument or evidence that would entitle it to summary judgment on this issue.

## II.     Whether New Rejection Forms Were Required

Plaintiff contends that the initial rejections terminated and new rejections were required when the subsequent policies *replaced* the original policies that were in effect when the rejection forms were signed, based on the fact that the change code at the end of the policy changed between the time Plaintiff signed the rejection form and the date of the accident.

Plaintiff contends that rejection remains valid only when policy is renewed, pursuant to NMSA §66-5-301(C), which provides that UM coverage need not be provided in a renewal policy where the named insured has rejected such coverage. While this statement is true, it is not dispositive because it overlooks the obvious. State Farm does not argue that the policies that existed at the time of the accident were "renewed," but rather they were the *same* policies that existed when Mr. Quintana first signed the rejections forms. Also, State Farm does not dispute that use of the words "renewal" and "replacement" have different meanings, but does dispute that issuance of a "replacement" policy means that new rejections are required. The best

Plaintiff can do on this issue is his SOF No. 3, which refers to the State Farm Policy Number Guide:

> In the sample, change code A indicates changes to the original policy have resulted in issuance of a new policy. If a second such change occurs, change code B is assigned.

Ex. 3.   However, as noted previously in the Court's discussion on Defendant's motion for summary judgment, State Farm defines "new policy" in that context as a *new physical document* that was mailed to the insured.  *See* Deft's Reply to Deft's Mot. for Sum. J, Doc. 41 at 7, n.3.   Moreover, State Farm's use of the term "new policy" when referring to a new physical document that is issued when a change code occurs on the policy does not lead to the conclusion that the policy contains new contractual duties and obligations, as defined under New Mexico law.   Thus, Plaintiff's SOF No. 3 would not entitle Plaintiff to summary judgment, even if it were undisputed.   Plaintiff's SOF No. 4 states that the letter at the end of a State Farm auto policy "does not change simply because the policy was renewed."   This statement is undisputed but it is not material or relevant to the central question here because it does not explain what a change code *does* mean or whether a change code in a policy number *does* require a new rejection under New Mexico law.

In presenting evidence and arguments, Plaintiff attributes to Defendant statements or facts which were not made or adopted by State Farm.   Because State Farm uses the terms "replacement policy" or "new policy" instead of "renewal policy" to refer to the Declarations that were mailed out with new change codes, Plaintiff contends that Defendant has therefore conceded that the policies existing at the time of the accident were different policies requiring new rejections under NM law.   This contention grossly mischaracterizes the actual evidence and testimony.   For example, Plaintiff cites to the testimony of Mr. Husser, State Farm's 30(b)(6)

employee, in which Mr. Husser agreed that when State Farm uses the word "renewal," and when State Farm uses the word "replaced," they always have a different meaning.  Pltff's SOF No. 1 (undisputed).   Plaintiff would have the Court infer from this statement that if a policy is "replaced" and not "renewed," then it must be a "new policy" which requires a new rejection. However, Mr. Husser expressly disagreed that a new rejection form is always required when a policy replaces a prior policy.  Doc. 34-1, Ex. 1 at 78:23-25, Ex. 2 at 30-31:21-1.

Plaintiff also ignores Mr. Husser's explanation of  "replacement policy."   Mr. Husser stated that a replacement policy could be issued in situations where new rejection forms were not necessary, for example, where a dormant policy was reinstated even though it may have a new basic policy number.  Ex. 1 at 31:10-22.  Mr. Husser also stated that a "replacement policy" can just as easily "mean something as simple as reprinting a DEC ("Declarations") page, or it could mean a change of the vehicle."  Ex. 2 at 31-32:24-10.   None of these examples would require new rejection forms.

The salient facts are undisputed in this case: the only changes to the policies at issue were to the change codes in the policy numbers upon processing Plaintiff's rejection of UM coverage form and the processing of new lienholders for the Yukon.    To suggest that these changes transformed the polices into new contracts which required new rejections (which is exactly what Plaintiff is arguing here) is not only a specious argument, but flies in the face of New Mexico law on this issue.   As a matter of law, and based on the undisputed facts, none of these changes require new rejections because there was no change in the contractual relationship between the parties.  The policies that were in effect at the time of the accident were the same policies for which Plaintiff had rejected UM coverage on the rejection form.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment to Provide Coverage **(Doc. 33)** is hereby DENIED;

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment **(Doc. 32)** is hereby GRANTED.

A Final Judgment shall be entered separately.

_____
UNITED STATES DISTRICT JUDGE